**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-CR-20380-ALTONAGA**

UNITED STATES OF AMERICA

v.

MIGUEL ALEJANDRO
PASTRAN HERNANDEZ,

    **Defendant.**

_____/

**GOVERNMENT'S SENTENCING MEMORANDUM AND RESPONSE**
**TO THE DEFENDANT'S MOTION FOR DOWNWARD VARIANCE**

The United States urges the Court to deny Miguel Alejandro Pastran Hernandez's (the "Defendant's") Motion for Downward Variance (DE 34) and instead sentence him to the top of the advisory sentencing guidelines range: 108 months' imprisonment, followed by 84 months as to Count 3, for a total of 192 months' imprisonment.

As a fully competent adult who has committed egregious violent offenses, the Defendant should be held accountable for his actions. With a criminal history category of I and a total offense level of 29, the Defendant's advisory guideline range is 87 to 108 months. As to Count 3, the guideline sentence is the statutory minimum term of imprisonment, 84 months, to run consecutively to any other count. (*See* PSI ¶ 73). The statutory maximum term of imprisonment for Counts 1 and 3 is life, and the statutory maximum term of imprisonment for Count 2 is 15 years. 18 U.S.C. § 1201(a)(1); 18 U.S.C. § 924(c)(1)(A)(ii); 18 U.S.C. § 2119(1). The United States submits that a sentence at the top of the advisory sentencing guidelines range would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).

When imposing a sentence, the district court must consider the § 3553(a) factors and make "an individualized assessment based on the facts presented." *Gall v. United States,* 552 U.S. 38, 49–50 (2007). Those factors include: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005). The Court should consider every defendant "as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 U.S. at 52.

A sentencing court need only consider the factors in 18 U.S.C. § 3553(a) and determine a reasonable sentence. *Talley*, 431 F.3d at 786. While the Court must consider all the relevant factors, it "need only acknowledge that it considered [them] and need not discuss each of these factors in either the sentencing hearing or in the sentencing order." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007). The Court may give greater weight to some factors than others. *See United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009). While guidelines sentences generally should approximate the § 3553(a) factors, a variance may be appropriate where "the case at hand falls outside the 'heartland' to which the [United States Sentencing Commission] intends individual guidelines to apply" or where "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations." *Rita v. United States*, 551 U.S. 338, 351 (2007).

In the instant case, the Defendant moved for a downward variance based on his personal history and characteristics, including his age and his purported mental health issues (*see* DE 34). In support of these arguments, the Defendant cites only non-binding decisions from outside the

Eleventh Circuit and one unpublished Eleventh Circuit opinion (*id*. at 2-3). The Defendant also filed a psychological evaluation, under seal, and several character letters in support of sentencing (DE 33, 37). The character letters written by the Defendant's family, church, and friends—all in Venezuela—speak of him as a man who comes from a "very good family with Christian principles", who "has never been involved in vices nor in destructive behaviors" (*see* DE 37-1).

The Defendant's psychological evaluation appears to be the first time that a medical professional reported that the Defendant may suffer from mental health disorders. This evaluation is of limited value because the psychologist wrote it after meeting the Defendant on just one occasion, based on the Defendant's self-reporting of his childhood experiences and history. The psychologist provisionally diagnosed the Defendant with unspecified disorders but noted that further testing would be required to determine possible neurological involvement (*see* sealed evaluation at 3, 5).

Notably, the PSI, which the Defendant did not object to, described the Defendant's family background and economic situation in Venezuela but noted that "no instances of physical abuse or other trauma were noted during his formative years." (PSI ¶ 44). The Defendant also "denied ever being diagnosed with any mental health condition and/or receiving treatment for such." (PSI ¶ 52). After being seen by the psychology department at FDC Miami, the Defendant "was found to be stable and not in need of ongoing mental health services." (PSI ¶ 52). The PSI also stated, "No follow-up needed or recommended at this time. Thus, mental health treatment is not recommended." (*Id*.).[1]

---

1  After his arrest, the Defendant reported to pretrial services that he suffered from self-diagnosed depression and anxiety, but he denied ever being treated by a mental health professional.

3

A faithful application of the 3553(a) factors does not require a downward variance in this case. Given the nature and circumstances of the Defendant's offense, the need to protect the public from future crimes of the Defendant, to afford deterrence to criminal conduct, and the need to provide just punishment for the offense, this Court should sentence him to the top of the advisory sentencing guidelines range.

Here, the nature and circumstances of the offense are of the utmost seriousness. For three days, the Defendant kidnapped a Lyft driver ("the victim") at gunpoint and forced her to drive the Defendant more than 1,300 miles, from Texas to Florida, in her vehicle. On or about August 16, 2024, the Defendant ordered a Lyft ride near Arlington, Texas. After the ride was complete, but before he exited the victim's vehicle, the Defendant pulled out a weapon and threatened the victim (PSI ¶ 7). The Defendant ordered the victim to drive him to Florida, and in fear for her life, the victim complied (PSI ¶ 8). During their trip, the Defendant found the victim's unloaded firearm in the vehicle. He then loaded the firearm, kept it on his person for the rest of the kidnapping, and brandished it at the victim to force her to comply with his demands (PSI ¶ 9). Once they were in Miami, Florida, the Defendant made the victim help him plan a second kidnapping, intending to demand a $3 million ransom (PSI ¶ 11). The Defendant only abandoned his plan when the police showed up and the Defendant fled (PSI ¶ 12). Inside the Defendant's backpack, law enforcement later found multiple Airsoft or BB guns, knives, a mask, a hat, sunglasses, binoculars, walkie-talkies, zip-ties, and other items (*see* DE 21 at 4).

As the Defendant's victim writes in the Victim Impact Statement, the Defendant forever changed her life, making her unable to continue her work as a Lyft driver or to feel personal

4

security.[2] The victim feared she would die during the three days that the Defendant kidnapped her. The victim asks that the Defendant serve the fullest sentence possible because of the impact that the Defendant's actions had on the victim, her friends, and her family—and because the Defendant was planning to do this to someone else and their family.

This Court should sentence the Defendant to a term of imprisonment that adequately promotes respect for the law, provides just punishment for the offense, affords adequate deterrence, and importantly—protects the public from further crimes of the Defendant. But-for law enforcement's intervention, the Defendant would have likely committed violent crimes against additional victim(s).

As to the Defendant's history and characteristics, he is a 24-year-old adult, fully capable of knowing right from wrong. Despite being provisionally diagnosed with unspecified mental health disorders, the Defendant understood what he was doing when he committed the instant offense, as evidenced by his elaborate preparations, the multiple days he kept his victim kidnapped at gunpoint, and his intentions to commit a second kidnapping once in Miami.

District courts are often presented with arguments similar to the Defendant's contentions in this case. However, it is well established that the Court has discretion to give greater weight to some factors other than others. *See Shaw*, 560 F.3d at 1238; *see also United States v. Harrison*, 623 F. App'x 987 (11th Cir. 2015) (defendant's 151–month sentence for two counts of being felon in possession of a firearm was not substantively unreasonable, despite the defendant's request for a 120–month total sentence; the district court acknowledged the defendant's tragic background, his lack of education, the fact that he had constantly been in and out of prison, and his mental

---

2   The Victim Impact Statement was filed separately under seal (DE 38).

problems and continued drug use, but ultimately concluded that given his lengthy and escalating criminal history and his failure to have ever functioned independently, a within-guideline sentence was appropriate); *see also United States v. Morrison*, 2024 U.S. App. LEXIS 22145, at *15-16 (11th Cir. 2024) (defendant's 132-month sentence for fentanyl and firearms offenses was not substantively unreasonable, despite defendant's mitigating factors—which the district court recognized as compelling—including defendant's history of drug use, his parents' abusive behavior, and the lack of meaningful parental guidance).

In this case, a sentence of 192 months' imprisonment, which is at the top of the advisory sentencing guidelines range, would be sufficient, but not greater than necessary, to comply with the purposes of sentencing. 18 U.S.C. §3553(a). A sentence of 192 months of imprisonment is necessary to achieve the overarching sentencing purposes of retribution, deterrence, incapacitation, and rehabilitation. Any sentence within the advisory sentencing guidelines would be well below the statutory maximum sentence of life in prison. *See, e.g.*, *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (explaining that a sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence); *United States v. Winingear,* 422 F.3d 1241, 1246 (11th Cir. 2005) (comparing the sentence imposed to the statutory maximum when assessing substantive reasonableness).

[This space intentionally left blank]

## CONCLUSION

Accordingly, the United States respectfully requests that the Court deny the Defendant's motion for a downward variance and sentence the Defendant to the top of the guideline range: 108 months, followed by 84 months as to Count 3, for a total of 192 months' imprisonment.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By: /s/ *Elizabeth Hannah*
Elizabeth Hannah
Assistant United States Attorney
Southern District of Florida
Court ID No. A5503171
99 Northeast 4th Street
Miami, Florida 33132-2111
Telephone: (305) 961-9019
E-mail: Elizabeth.Hannah@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 19, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ *Elizabeth Hannah*
Elizabeth Hannah
Assistant United States Attorney